IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE APPLICATION OF VENEQUIP, S.A., | § § § § § § § § § § | |
| *Applicant*, | | |
| | | Case No. _____ |
| SOUTHWORTH MILTON, INC. D/B/A MILTON CAT., | | |
| *Respondent*. | | |

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION
FOR ORDER PURSUANT TO 28 U.S.C. § 1782(a) PERMITTING VENEQUIP, S.A.
TO ISSUE SUBPOENAS FOR THE TAKING OF DEPOSITIONS AND
THE PRODUCTION OF DOCUMENTS FROM SOUTHWORTH MILTON, INC. D/B/A
MILTON CAT FOR USE IN SWISS PROCEEDINGS**

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................................................................. i
TABLE OF AUTHORITIES .......................................................................................................... ii
I.   INTRODUCTION AND BACKGROUND FACTS ........................................................... 1
   A.   The Contractual Relationship Between Venequip and Caterpillar S.A.R.L. .......... 1
   B.   Venequip and CAT Enjoyed a Mutually Beneficial Relationship for Many Years ........................................................................................................................ 3
   C.   CAT Parent Purports to Terminate the Relationship ............................................... 3
   D.   Venequip Discovers CAT Has Been Acting in Bad Faith for Years ...................... 4
   E.   Venequip Commences the Swiss Proceeding and Seeks § 1782 Discovery .......... 5
II.  LEGAL ANALYSIS AND ARGUMENT .......................................................................... 6
   A.   Statutory Purpose ..................................................................................................... 6
   B.   Legal Standard ......................................................................................................... 7
       1.   *The Three Statutory Requirements* ............................................................. 7
       2.   *The Four Discretionary Factors* ................................................................. 7
   C.   Venequip Satisfies All Three Statutory Requirements. .......................................... 8
       1.   *Milton CAT Resides or is "Found" in the District of Massachusetts.* ....... 8
       2.   *The Requested Discovery is for Use in a "Foreign Proceeding."* ............. 8
       3.   *Venequip, the Applicant, is an "Interested Person"* .................................. 9
   D.   Venequip Satisfies All Four Discretionary Factors and the Court Should Exercise its Discretion to Grant the Application ..................................................... 9
       1.   *Milton CAT is Not a Participant in the Swiss Proceeding and the Information Sought is Inaccessible Absent § 1782 Assistance* ................ 10
       2.   *The Swiss Tribunal Would Likely Accept the Requested Discovery* ......... 11
       3.   *Venequip is Not Attempting to Circumvent Foreign Policies* ................... 11
       4.   *The Discovery Sought is Not Intrusive or Burdensome.* .......................... 12
   CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chevron Corp. v. Shefftz*,
    754 F. Supp. 2d 254 (D. Mass. 2010) .................................................................................10, 11

*In re Application of Republic of Ecuador v. Douglas*,
    153 F. Supp. 3d 484 (D. Mass. 2015) ...........................................................................................8

*In re Bayer AG,*
    146 F.3d 188 (3d Cir. 1998)..............................................................................................7, 9, 12

*In re Ex Parte Appl. of Jommi*,
    2013 WL 6058201 (N.D. Cal. Nov. 15, 2013) ...............................................................8, 9, 11

*In re Penner*,
    No. 17-CV-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017) ...............................10, 12

*In re Peruvian Sporting Goods S.A.C.*,
    No. CV 18-MC-91220, 2018 WL 7047645 (D. Mass. Dec. 7, 2018).........................................7

*In re Porsche Auto. Holding SE*,
    No. CV 19-MC-91129-LTS, 2019 WL 5806913 (D. Mass. Nov. 6, 2019)..............................11

*In re Porsche Automobil Holding SE*,
    No. CV 19-MC-91129-LTS, 2020 WL 813710 (D. Mass. Feb. 19, 2020)..............................11

*In re Porsche Automobil Holding SE*,
    No. 20-1239 2021 WL 140638 (1st Cir. Jan. 15, 2021) ...........................................7, 8, 9, 11

*In re Schlich*,
    893 F.3d 40 (1st Cir. 2018)................................................................................................7, 9, 10

*Intel Corp. v. Advanced Micro Devices, Inc.,*
    542 U.S. 241, 124 S. Ct. 2466 (2004)............................................................................. *passim*

*Weber v. Finker*,
    554 F.3d 1379, 1384 (11th Cir. 2009) ......................................................................................11

**Statutes**

28 U.S.C. § 1782(a) ..........................................................................................................................7

Venequip, S.A ("Venequip" or the "Applicant") submits this Memorandum of Law in support of its contemporaneously filed Application (the "Application") to issue subpoenas pursuant to 28 U.S.C. § 1782 directing Southworth Milton, Inc. D/B/A Milton CAT ("Milton CAT" or the "Respondent") to produce documents and provide deposition testimony for use in litigation recently filed by Venequip in Switzerland (the "Swiss Proceeding"). Venequip seeks to issue subpoenas for documents and testimony substantially in the form set forth in **Exhibits B** and **C** based on the requested information's relevance to the Swiss Proceeding. **Exhibit D** contains a supporting factual declaration by Mickael Besse, Finance Director of the Venequip Group.

## I.   INTRODUCTION AND BACKGROUND FACTS

Venequip, a Venezuelan entity, seeks information from Milton CAT, found in this District, for use in the Swiss Proceeding in which Venequip is or will be a party, and Milton CAT is not. **Ex. D**, Besse Decl. at ¶ 28-29.

### A.   The Contractual Relationship Between Venequip and Caterpillar S.A.R.L.

Venequip is a Venezuelan industrial construction supplier and servicer founded in 1927. *Id.* at ¶ 2. Beginning in or around 2005, Venequip operated as the only authorized Dealer Representative and Distributor for Caterpillar S.A.R.L. ("CAT"), a Swiss entity. *Id*., at ¶ 3. CAT is owned and controlled by Caterpillar Inc. ("CAT Parent"), an Illinois-based publicly traded company. *Id.* CAT Parent is the largest manufacturer of heavy equipment and machinery in the world. *Id.*[1]

Under two written agreements between Venequip and CAT—the Distribution Agreement and the Sales and Service Agreement—Venequip distributed, sold, and serviced CAT equipment in Venezuela (collectively, both Agreements, the "Distribution and Services Agreements"). *Id*., at

---

[1] *See also* https://www.caterpillar.com/en/company.html.

¶ 4. In addition, at several points in time, CAT issued letters indicating that Venequip was the only authorized dealer of CAT equipment in Venezuela. *Id.*, at ¶ 5. Further, in the parties' course of dealings and in practice, CAT always treated and held out Venequip as its exclusive distributor in Venezuela. *Id.*, at ¶ 6.

The Distribution and Services Agreements made clear that Venequip has been the Dealer Representative for Venezuela. *Id.*, at ¶ 7. Accordingly, these agreements provided that Venequip had to maintain places of business at various locations within Venezuela. *Id*. Venequip was also required to maintain a certain amount of stock parts and to provide warranty services to the users of CAT equipment within Venequip's territories. *Id*. Additionally, the Distribution and Services Agreements required Venequip to make investments to perform product improvement programs, employee training programs, and other such services and/or investments to its facilities as requested by CAT. *Id*. In other words, the Distribution and Services Agreements provided and required that Venequip make substantial investments within its prescribed territories in its role as Dealer for CAT, which Venequip did (in excess of tens of millions of dollars). *Id*.

Precisely because of Venequip's role as the main (and, in practice, exclusive) distributor of CAT equipment in Venezuela, the Distribution and Services Agreements provided that CAT would make payments to Venequip for invading sales of CAT equipment in Venequip's territories by other CAT dealers ("Invasion Fees"). *Id.*, at ¶ 8. CAT made these payments either as a cash payment to Venequip or by giving Venequip credit that it could use towards future purchases of CAT equipment. *Id*. The value of the compensation to which Venequip was entitled was a percentage of the CAT-suggested price for parts and a percentage of the selling price for services. *Id*.

The Distribution and Services Agreements are governed by Swiss law and subject to Swiss courts. *Id*., at ¶ 9.

### B.    Venequip and CAT Enjoyed a Mutually Beneficial Relationship for Many Years

By 2010, Venequip had annual revenues of approximately $500 million, as a result of selling and servicing CAT equipment in Venezuela, with over $350 million in assets built or acquired in Venezuela in furtherance of the Distribution and Services Agreements. *Id*., at ¶ 10. Indeed, as a result of Venequip's efforts, CAT became the dominating brand for heavy equipment and machinery in Venezuela. *Id*., at ¶ 11. For example, approximately 75% of all machinery and generators in the oil and gas industry in Venezuela were CAT equipment sold and serviced by Venequip. *Id*.. Venequip made substantial efforts and investments to make this happen. *Id*., at ¶ 12. For example, by 2010, Venequip had spent tens of millions of dollars building specialized shops to repair and service CAT equipment. *Id*. Venequip also employed hundreds of technicians certified by CAT, for whom Venequip paid the cost of training. *Id*.

### C.    CAT Parent Purports to Terminate the Relationship

Notwithstanding the foregoing, CAT Parent purported to terminate its relationship with Venequip by letter dated March 18, 2019, effective June 30, 2019. *Id*., at ¶ 13. While no reason was given for the purported termination, it is plain that it was not because of Venequip's performance; indeed, Venequip's success as a CAT distributor is reflected in its robust sales. *Id*., at ¶ 14. Moreover, to date, neither CAT nor CAT Parent has ever alleged or stated in any communication or correspondence with Venequip that Venequip failed to perform or in any way breached the Distribution and Services Agreements. *Id*.[2]

---

[2] Starting in 2015, the U.S. government began issuing regulations restricting certain business activities in Venezuela or with the Venezuelan government. *See* OFAC Sanctions Website available at https://home.treasury.gov/policy-issues/financial-sanctions/sanctions-programs-and-country-information/venezuela-related-sanctions. In February

### D. Venequip Discovers CAT Has Been Acting in Bad Faith for Years

Venequip recently learned that for at least several years CAT has been acting in bad faith with respect to Venequip, and in violation of the Distribution and Services Agreements, causing Venequip significant financial damage. *Id.*, at ¶ 15. The evidence supports a finding that CAT circumvented Venequip's rights for years by: (a) discriminating against Venequip by charging Venequip substantially more for CAT equipment than it charged other similarly situated CAT dealers, including Milton CAT, thus rendering Venequip increasingly noncompetitive as compared with out-of-state dealers who were incentivized to (and did) sell CAT equipment to destinations in Venequip's territories, thereby reducing Venequip's market share in Venezuela; and (b) failing to pay Venequip the Invasion Fees, which, as described above, are the payments that Venequip is entitled to receive from CAT for out-of-country dealers, including Milton CAT, invading Venequip's territory and selling CAT equipment and parts in Venezuela, thus wrongfully depriving Venequip of millions of dollars and impeding Venequip's ability to sell or offload inventory to other dealers when overstocked. *Id.*, at ¶ 16.

Specifically, and for example, when Venequip was overstocked, it attempted to sell to other dealers its stock of CAT equipment. *Id.*, at ¶ 17. However, certain dealers responded by informing Venequip that they had previously purchased the same equipment from CAT at substantially lower prices, a fact that CAT later acknowledged (upon being called out for it) in one specific instance by offering to make up the difference to Venequip. *Id*. In some instances, it appears that the price difference was as much as 50%. *Id*.

---

2019, the U.S. government indicted two members of Venequip Machinery Sales Corp., a U.S. entity associated with Venequip, for paying bribes, as part of a scheme to enrich themselves, to three officials of a Venezuelan government-owned entity from 2009 to 2013. Neither Venequip—the Venezuelan entity and Applicant here—nor any of its executives was charged. *See* DOJ Press Release available at https://www.justice.gov/opa/pr/two-businessmen-charged-foreign-bribery-connection-venezuela-bribery-scheme. CAT never raised any of these issues with Venequip as grounds for termination. Indeed, no reason for the purported termination was given at all. Besse Decl. at ¶ 14.

Further, by pure coincidence, Venequip discovered that Milton CAT was selling into its territory when Venequip began receiving numerous requests by users of CAT equipment in Venezuela to repair and service CAT equipment that Venequip had not sold. *Id*., at ¶ 18. Some of the equipment and parts sold into Venezuela appear to have been sold by Milton CAT. *Id*. Given the volume of CAT equipment that Venequip has identified in Venezuela that was not sold by Venequip, CAT owes Venequip millions of dollars in Invasion Fees. *Id*.

Further still, CAT is deliberately impeding Venequip's ability to do any business in Venezuela. *Id*., at ¶ 19. For example, Venequip continues to repair legacy CAT equipment installed in Venezuela. *Id*. As such, it needs to purchase spare parts from CAT dealers. *Id*. However, dealers have represented to Venequip that they cannot sell any parts to Venequip because CAT has prohibited them from doing so, another demonstration of CAT's bad faith. *Id*.

### E.     Venequip Commences the Swiss Proceeding and Seeks § 1782 Discovery

Venequip has now commenced litigation in Switzerland against CAT. *Id*., at ¶ 20. As indicated above, the Distribution and Services Agreements are governed by Swiss law and subject to Swiss courts. *Id.* at ¶ 9. Under Swiss law, the case is subject to mandatory conciliation proceedings prior to the start of court proceedings. *Id*., at ¶ 21.

Swiss law requires contracting parties to act in good faith and to act in furtherance of the purpose of the agreement of the counterparty's expectations, rather than acting to frustrate the agreement's purpose and injure the counterparty. *Id*., at ¶ 22. Here, Venequip has sued CAT for breach of contract. *Id*., at ¶ 23. Specifically, Venequip alleges that CAT acted in bad faith and frustrated the purpose of the Distribution and Services Agreements, as well as Venequip's rights and expectations by, *inter alia*, (a) overcharging Venequip for equipment that it was selling to other dealers, such as Milton CAT, for substantially less; (b) facilitating the sale of equipment and parts by other dealers, such as Milton CAT, in Venezuela and restraining Venequip's ability to

compete with them by overcharging Venequip; (c) failing to pay all due Invasion Fees for sales of other dealers, such as Milton CAT; and (d) preventing Venequip from continuing to service legacy CAT equipment in Venezuela by blacklisting it and prohibiting dealers from selling parts to Venequip. *Id*. Under governing Swiss law, CAT cannot at once contractually commit to a distribution agreement with Venequip and simultaneously act to undermine the very purpose of that agreement. Venequip intends to demonstrate that CAT deliberately sought to make it impossible for Venequip to perform properly under the written agreements, given that CAT controls the manufacturer discounts and decides which dealer benefits from the discount, all the while knowing where each dealer sells the CAT products it receives. *Id*., at ¶ 24. Venequip seeks its actual losses, lost profits and other consequential damages.[3] *Id*., at ¶ 25. Under Swiss law, a plaintiff is entitled to any and all forms of compensation to make it whole and place it in the same situation as if the harmful conduct had never occurred. *Id*.

Milton CAT is one of several dealers that sold CAT products in Venezuela. *Id*., at ¶ 27. With this Application, Venequip seeks discovery from Milton CAT pursuant to 28 U.S.C. § 1782 for use in the Swiss Proceeding.

## II.  LEGAL ANALYSIS AND ARGUMENT

### A.  Statutory Purpose

Section 1782 is the most recent version of statutes that for more than 150 years have "provide[d] federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247, 124 S. Ct. 2466, 2473 (2004). The purpose of 28 U.S.C. § 1782 is to allow participants in proceedings before foreign or international tribunals to obtain assistance from U.S. federal courts in gathering evidence for use in those foreign or

---

[3] In addition, Venequip does not believe that the Distribution and Services Agreements were properly terminated and thus will also seek expected revenues from 2019 to this day.

international proceedings. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. at 247; *see also In re Bayer AG*, 146 F.3d 188, 191–92 (3d Cir. 1998) (the current version of § 1782 was amended "to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect."). The First Circuit has explained that "the twin aims of the statute [are] 'providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.'" *In re Schlich*, 893 F.3d 40, 46–47 (1st Cir. 2018) (citation omitted). As explained by the U.S. Supreme Court in its landmark § 1782 opinion, "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247.

Granting Venequip's Application is in line with both the language and purpose of § 1782.

### B.  Legal Standard

#### 1.  *The Three Statutory Requirements*

Section 1782 authorizes the Court to grant discovery for use in a proceeding in a foreign or international tribunal if: (i) the person from whom discovery is sought resides or is found in the district; (ii) the discovery is for use in a proceeding before a foreign tribunal; and (iii) the application is made by a foreign or international tribunal or "any interested person." 28 U.S.C. § 1782(a); *see also In re Schlich*, 893 F.3d at 46 (citation omitted); *In re Peruvian Sporting Goods S.A.C.*, No. CV 18-MC-91220, 2018 WL 7047645, at *3 (D. Mass. Dec. 7, 2018). As discussed below, all three statutory requirements are met here.

#### 2.  *The Four Discretionary Factors*

"Once the statutory requirements are met, a district court is free to grant discovery in its discretion." *Intel*, 542 U.S. at 264; *see also In re Porsche Automobil Holding SE*, No. 20-1239,

2021 WL 140638 (1st Cir. Jan. 15, 2021). In exercising that discretion, a district court should consider four discretionary factors: (i) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible *absent* § 1782 aid; (ii) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (iii) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the U.S.; and (iv) whether the subpoena contains unduly intrusive or burdensome requests. *See Intel*, 542 U.S. at 264–65; *see also In re Application of Republic of Ecuador v. Douglas*, 153 F. Supp. 3d 484, 488 (D. Mass. 2015). As discussed below, all four discretionary factors are met here.

### C. Venequip Satisfies All Three Statutory Requirements.

Venequip satisfies the minimal showing necessary to authorize § 1782 discovery.

#### 1. *Milton CAT Resides or is "Found" in the District of Massachusetts.*

Publicly available information confirms that Milton CAT "resides or is found" in this District. *See* **Exhibit E**, business entity summary from Massachusetts Secretary of State, listing 100 Quarry Drive, Milford, Massachusetts 01757, as the location of Milton CAT's principal office; *see also* **Exhibit F**, Milton CAT's 2021 Annual Report, listing 100 Quarry Drive, Milford, Massachusetts 01757, as "the corporation's principal office."

#### 2. *The Requested Discovery is for Use in a "Foreign Proceeding."*

The Swiss Proceeding plainly qualifies as a foreign or international proceeding within the meaning of § 1782. Venequip has filed a lawsuit in Switzerland asserting claims for breach of contract against CAT. The litigation will proceed and be adjudicated before a Swiss tribunal. *See, e.g., In re Ex Parte Appl. of Jommi*, 2013 WL 6058201, at *3 (N.D. Cal. Nov. 15, 2013) (Swiss court proceeding qualified as "foreign proceeding" for grant of § 1782 application). "It is not

necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding." *Intel*, 542 U.S. at 259 (internal quotation omitted); *see also id.* at 247 (proceeding "for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be *pending* or *imminent*") (emphasis in original); *In re Porsche Automobil Holding SE,* 2021 WL 140638, at *120 (affirming district court's conclusion that an application for discovery under Section 1782 met the statute's "for use" requirement despite the respondent's assertion that the evidence would not be relevant for at least five years in German court proceedings because "*Intel* requires only that the proposed discovery's use be 'within reasonable contemplation.'" (citation omitted)). If granted, Venequip will use the requested discovery to prosecute its lawsuit against CAT in the Swiss Proceeding. **Exhibit D**, Besse Decl. at ¶ 28.

### 3. *Venequip, the Applicant, is an "Interested Person"*

Venequip plainly constitutes an "interested person" as it is the plaintiff in the Swiss Proceeding. Indeed, the U.S. Supreme Court has confirmed that a litigant in a foreign proceeding "may be the most common example of the interested persons who may invoke § 1782." *Intel*, 542 U.S. at 256; *id*. at 257–58 ("a complainant possesses a reasonable interest in obtaining judicial assistance, and therefore qualifies as an 'interested person' within any fair construction of that term") (citation omitted).

### D. **Venequip Satisfies All Four Discretionary Factors and the Court Should Exercise its Discretion to Grant the Application**

Where, as here, the information sought is relevant, it is "presumptively discoverable" under § 1782 and the Court has discretion to grant the Application. *In re Bayer AG*, 146 F.3d at 196 ("relevant evidence is presumptively discoverable under § 1782"); *see also In re Schlich*, 893 F.3d at 52 ("a request for discovery under § 1782 that is plainly irrelevant to the foreign proceeding will

fail to meet the statutory 'for use' requirement, and must be denied before the court reaches the discretionary *Intel* factors"). Beyond relevance, all four discretionary factors here weigh ***in favor*** of granting Venequip's Application.

### 1. Milton CAT is Not a Participant in the Swiss Proceeding and the Information Sought is Inaccessible Absent § 1782 Assistance

Courts presumptively grant § 1782 applications where, as here, the target is not a participant in the foreign proceeding. *Intel*, 542 U.S. at 264. That is because, as the Supreme Court explained, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*. Accordingly, courts find the first discretionary factor satisfied and have granted discovery where a discovery target was not, and was not expected to become, a "participant" of the relevant foreign proceedings. *See, e.g.*, *In re Penner*, No. 17-CV-12136-IT, 2017 WL 5632658, at *2 (D. Mass. Nov. 22, 2017) (factor weighed in favor of granting § 1782 discovery where "none of the Respondents from whom the JOLs seek discovery will be [a participant in the Grand Court action for which the JOLs seek this discovery]"); *Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 261 (D. Mass. 2010) ("The Amherst-based Respondent resides outside the jurisdiction of both the Lago Agrio court and the UNCITRAL Arbitration panel. Both tribunals, therefore, cannot order the discovery that Petitioner seeks in this § 1782 action, and the first factor weighs in favor of granting discovery" under § 1782).

Here, Milton CAT is not and will not become a party to the Swiss Proceedings. Swiss courts do not have jurisdiction over Milton CAT and do not have authority to compel foreign third parties, such as Milton CAT, to produce discovery. *See* **Ex. D**, Besse Decl. at ¶ 29. Accordingly, Venequip does not have any means within the Swiss Proceeding or outside this Application to obtain the discovery requested.

Thus, this factor weighs *in favor* of granting Venequip's Application.

### 2. *The Swiss Tribunal Would Likely Accept the Requested Discovery*

To determine whether a § 1782 application meets the second discretionary factor, courts "have been instructed to tread lightly and heed only clear statements by foreign tribunals" that they would not welcome § 1782 assistance. *In re Porsche Auto. Holding SE*, No. CV 19-MC-91129-LTS, 2019 WL 5806913, at *7 (D. Mass. Nov. 6, 2019), *adopted sub nom. In re Porsche Automobil Holding SE*, No. CV 19-MC-91129-LTS, 2020 WL 813710 (D. Mass. Feb. 19, 2020), *aff'd*, No. 20-1239, 2021 WL 140638 (1st Cir. Jan. 15, 2021).

Here, there is no evidence that Swiss courts would reject evidence obtained in the United States via § 1782. To the contrary, U.S. courts have found Swiss courts affirmatively receptive to 1782 discovery. *See, e.g.*, *Jommi*, 2013 WL 6058201, at *4; *see also Weber v. Finker*, 554 F.3d 1379, 1384 (11th Cir. 2009) (affirming § 1782 discovery order where petitioner sought judicial assistance in context of Swiss criminal proceeding).

Accordingly, this factor weighs *in favor* of granting Venequip's Application.

### 3. *Venequip is Not Attempting to Circumvent Foreign Policies*

This factor weighs against the applicant only if the § 1782 application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *In re Porsche Automobil Holding SE*, 2021 WL 140638, at *120 (internal quotations and citations omitted). Here, there is no evidence of any such attempt. *See Jommi*, 2013 WL 6058201, at *4 (no circumvention of Swiss law). Rather, Venequip's request for discovery from Milton CAT is a good faith effort to obtain relevant, material information Venequip actually needs regarding a complex, cross-border commercial dispute. *See Chevron Corp. v. Shefftz*, 754 F. Supp. at 262  (holding this factor weighed in favor of the § 1782 Applicant),

This factor therefore also weighs *in favor* of granting Venequip's Application.

### *4.  The Discovery Sought is Not Intrusive or Burdensome.*

The information sought in Venequip's discovery requests is not "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. In weighing this factor, courts apply substantially the same standard as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. "The reference in § 1782 to the Federal Rules suggests that … the standards for discovery under those rules should also apply when discovery is sought under the statute." *Bayer*, 146 F.3d at 195. Here, the requests are narrowly tailored to the specific categories of information described in **Exhibits B** and **C**. The information sought is relevant and material to the Swiss Proceeding and is not otherwise readily obtainable. *See In re Penner*, 2017 WL 5632658, at *2 (finding the requested discovery is not merely duplicative and therefore not unduly intrusive or burdensome because previous discovery did not answer a question which required access to the requested documents and information).

Given that Venequip's discovery requests are similarly narrowly tailored, *see* **Exhibits B** and **C**, this final factor also weighs *in favor* of granting Venequip's Application.

### CONCLUSION

For the foregoing reasons, Venequip respectfully requests that the Court enter an Order pursuant to 28 U.S.C. § 1782 granting Venequip leave to serve the subpoenas attached hereto as **Exhibits B** and **C** and conduct the requested discovery, and for such other and further relief which Venequip is justly entitled.

| | |
|---|---|
| Dated: November 12, 2021 | Respectfully submitted,<br><br>**GREENBERG TRAURIG, LLP**<br><br>By: */s/ Jeffrey W. Greene*<br><br>**Jeffrey W. Greene, BBO# 662943**<br>One International Place<br>Boston, MA 02110<br>Tel: 617-310-6031<br>Fax: 617-310-6001<br>greenej@gtlaw.com<br><br>**Elizabeth E. Georgiopoulos, BBO# 698635**<br>One International Place<br>Boston, MA 02110<br>Tel: 617-310-6229<br>Fax: 617-310-6001<br>georgiopoulose@gtlaw.com<br><br>**Daniel Pulecio-Boek**<br>*Motion for pro hac vice admission forthcoming*<br>**Nicole Silver**<br>*Motion for pro hac vice admission forthcoming*<br>2101 L Street NW, Suite 1000<br>Washington, D.C. 20037<br>Tel: 202-331-3100<br>Fax: 202-331-3101<br>pulecioboekd@gtlaw.com<br>silvern@gtlaw.com<br><br>***COUNSEL FOR APPLICANT VENEQUIP, S.A.*** |